# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| SUN SPORTS & ENTERTAINMENT § | | |
|     Plaintiff § | | |
| § | | |
| v. § | CIVIL ACTION NO. 3:09-CV-0063-O | |
| § | ECF | |
| HUMITECH INTERNATIONAL § | | |
| GROUP, INC., RONALD KATZ § | | |
| AND KING LOUIE ENTERPRISES, § | | |
| L.L.C. § | | |
|     Defendants § | | |

## MEMORANDUM OPINION AND ORDER

On January 12, 2009, Plaintiff filed a Petition for Turnover and Request for Temporary and Permanent Injunction (Doc. 1). Before the Court now is the Petition (Doc. 1), Plaintiff's brief in support of that Petition (Doc. 9), the putative defendants Katz and King Louie Enterprises, L.L.C. (" KLE" ) Brief in Response (Doc. 5); and Katz and King Louie Enterprises LLC's Appendix (Doc. 6).

The Plaintiff seeks a temporary restraining order. For reasons outlined below, that request is DENIED.

### Background

Although Plaintiff did not include the term "temporary restraining order" in the title of his Petition, the text of the Petition demonstrates that Plaintiff is requesting such relief. *Id. See* Doc. 1. Styled *Petition for Turnover and Request for Temporary and Permanent Injunction*, the Petition also alleges that irreparable harm will result "[u]nless a temporary

1

restraining order and temporary injunction are granted … prior to the appearance of the Defendants KLE and Katz, for which there is no adequate remedy of law." Doc. 1 at 9. It says further that a copy of this pleading was provided by facsimile transmission to counsel for the Defendant and that Plaintiff's counsel "stated that this request for temporary restraining order would be presented to the Court on Tuesday, December 29, 2008." Doc. 1 at 10 (Defense counsel disputes these assertions). The Petition was presented to this Court on January 12, 2009. *See* Doc. 1.

Plaintiff alleges that judgment debtors from a separate suit have fraudulently transferred assets to third-parties, and now asks the Court to require these non-judgment debtor third parties to turn the assets over to the Plaintiff under the Texas Turnover Statute. *See,* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(b)( Vernon 2005). Counsel for both sides have responded with the expedited briefing that the Court sought given representations of an emergency by the Plaintiff (Doc 4). The Court asked the parties to address the application of *Bollore v. Import Warehouse, Inc.,* in particular. *See, Bollore v. Import Warehouse, Inc.,* 448 F.3d 317 (5th Cir. 2006).

**Legal standards**

In *Beaumont Bank*, the Texas Supreme Court held that the turnover statute is a purely procedural mechanism limited to employment among parties to a final judgment. *Beaumont Bank v. Buller*, 806 S.W.2d 223, 224 (Tex. 1991). The Fifth Circuit has since held this to be the law in Texas, although Texas state courts have shown some "uncertainty as to how aggressive trial courts can be in enforcing turnover orders … [against] non-judgment debtors …." *Maiz v. Virani,* 311 F.3d 334, 343-45 (5th Cir. 2002).

The uncertainty stems from dicta in *Schultz v. Fifth Judicial District Court of Appeals at Dallas*, 810 S.W.2d 738 (Tex. 1991), *abrogated by In re Sheshtawy*, 154 S.W.2d 114 (Tex. 2004). *See Maiz v. Virani,* 311 F.3d 334, 343-45 (5th Cir. 2002). *Schultz* was an original mandamus action in which the issue was "whether a court of appeals abuses its discretion when it declines to entertain a contempt motion based on a turnover order that is the subject of the appeal then pending in the court of appeals." *Schultz,* 810 S.W.2d at 738. *Schultz* dealt with an earlier version of the turnover statute that allowed the district court in that litigation to order the debtor to turn over his paycheck. *Id.*, 810 S.W.2d at 738-39. The debtor refused while the matter was on appeal and the creditor sought a contempt order from the appellate court. *Id.* The appellate court in turn referred the matter to the trial court – an error that *Schultz* corrected by conditional mandamus essentially ordering the appellate court to confront the matter. *Id.* at 740. In dicta, *Schultz* noted that some state courts had brought non-judgment creditors into court under the turnover statute.

Likewise, some Texas appellate courts have accepted that under "certain circumstances" third parties to a judgment may be reached through the turnover statute. *International Paper Company v. Garza*, 872 S.W.2d 18, 19 (Tex. App. – Corpus Christi 1994, no writ); *see also, Dale v. Finance America Corp.,* 929 S.W.2d 495 (Tex. App. – Fort Worth 1996, writ denied); *Norsul Oil & Min. Ltd. V. Commercial Equip. Leasing Co.,* 703 S.W.2d 345 (Tex. App. – San Antonio, writ denied), *cert. denied,* 508 U.S. 965, 124 L.Ed.2d 692, 113 S.Ct. 2944 (1992).

In *Bollore*, the Fifth Circuit overturned a federal district court decision that followed the minority line of cases represented by *International Paper, Dale,* and *Norsul. Bolore,* 448

3

F.2d 317 at 322-24. The *Bollore* court dealt with a judgment-debtor who was allegedly moving assets into the control of his mother and her convenience store in Michigan. The court declared that:

> Texas courts construing the turnover statute have expressly and consistently held that it may be used to reach only the assets of parties to the judgment, not the assets of non-judgment third parties. Moreover, the turnover statute is a purely procedural mechanism, and it is black-letter Texas law that proceedings pursuant to the turnover statute may not be used to determine the substantive property rights of the judgment debtors or of third parties. Even more specifically, Texas courts have held that a turnover proceeding is not an appropriate vehicle through which to make an alter ego determination and that a separate trial on the merits of that issue is required before the alter ego can be subject to a turnover proceeding.

*Id.,* 448 F.2d at 322-23 (citations omitted).

The *Bollore* plaintiff-appellants cited *Schultz* and its progeny. *Bollore,* 448 F.3d 317, 323, n. 7 (citations omitted). The court replied that while "this language might reflect 'uncertainty as to how aggressive trial courts can be in enforcing turnover orders which affect the rights of non-judgment debtors,' it does not undermine [cited Texas cases] that have expressly held that the turnover statute is not a vehicle to adjudicate substantive property rights." *Id.*

The Austin Court of Appeals dealt directly with application of the turnover statute to non-judgment debtors, recognizing that *Schultz* was being misread, in *Parks v. Parker*. *Parks v. Parker,* 957 S.W.2d 966 (Tex. App. – Austin 1997, no writ). In *Parks,* an individual judgment debtor acted in his capacity as an independent executor when he disposed of property arguably subject to recovery under that judgment. *Parks*, 957 S.W.2d at 667. Given Plaintiffs' allegations, *Parks* is particularly illustrative of the law here:

> [The *Beaumont Bank*] holding comports with the literal words of the turnover statute, which provides that the court may "order the *judgment debtor* to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control." [The "Turnover Statute"], Tex. Civ. Prac. & Rem.Code Ann. § 31.002(b) (West 1997) (emphasis added).
>
> Regardless, some courts of appeals have held that in circumstances where a third party retains property that is shown to be non-exempt, owned by a judgment debtor, and subject to the debtor's possession or control, the trial court may issue a turnover order against the third party .... We decline to follow that line of cases. Section 31.002 authorizes the issuance of an order against only the judgment debtor .... The judgment debtor may be ordered to turn over property he possesses. The judgment debtor can also be ordered to turn over property, no matter who possesses it, if the property is subject to his control. § 31.002. The debtor risks imprisonment for contempt if he does not comply. [Citations omitted.] However, there is no provision for the issuance of a turnover order against a third party who possesses property belonging to the judgment debtor.

Id. at 668-69. This is a clear statement of Texas law properly understood. *Bollore v. Import Warehouse, Inc.,* 448 F.3d 317 (5th Cir. 2006); *Maiz v. Virani,* 311 F.3d 334, 343-45 (5th Cir. 2002); *see, e.g., Bay City Plastics, Inc. v. McEntire*, 106 S.W.3d 321, 324 (Tex. App. – Houston 2003, writ denied); *Cross, Kieschnick & Co. v. Johnston*, 892 S.W.2d 435, 438 (Tex. App. – San Antonio 1994, rehearing denied); *United Bank Metro v. Plain Overseas Group*, 670 S.W.2d 281, 283 (Tex. App. – Houston [1st Dist.] 1983, no writ); *Steenland v. Tex. Commerce Bank Nat'l Assn*, 648 S.W.2d 387, 389 (Tex. App. – Tyler 1983, writ ref'd n.r.e.).

Restricting the reach of judicial power to the plain and patent meaning of the statute is certainly not a novel concept in Texas turnover litigation, before or after the definitive statement of *Beaumont Bank*. *Parks*, 957 S.W.2d at 667; *see also*, *United Bank Metro v. Plain*

5

*Overseas Group, Inc.,* 670 S.W.2d 281, 284 (Tex. App. –Houston [1st Dist.] 1983, no writ). ("We construe [the turnover statute] as being intended to facilitate collection of assets from the judgment debtor only and not from those unnamed in the prior suit, but now asserted to be engaged in a fraudulent conspiracy against judgment creditors"); *Steenland v. Tex. Commerce Bank Nat'l Assn,* 648 S.W.2d 387, 389 (Tex. App. – Tyler 1983, writ ref'd n.r.e.).

Due process concerns also limit the reach of the turnover statute sought by the Plaintiff. *Bollore,* 448 F.3d 317, 323. The *Bollore* court held that "a court may not – as the district court attempted to do in this case – use the turnover statute to adjudicate the rights and seize the assets of a third party who might not otherwise be amenable to jurisdiction in that court." *Id. at* 324.

> A proceeding to determine whether a transaction is fraudulent or otherwise to determine property rights of the parties is improper under the turnover statute, for the statute "does not allow for a determination of the substantive rights of involved parties." *Republic Ins.*, 825 S.W.2d at 783; *see also United Bank Metro*, 670 S.W.2d at 284. It is even more clear that a party not even before the court cannot have its rights determined via the turnover proceeding. Thus, in this case, the district court erred in using the turnover proceeding to determine that the stock pledge was a fraudulent transfer and was therefore void. *Id.* The validity of the pledge agreement must be challenged in a further proceeding.

*Resolution Trust Corp. v. Smith*, 53 F.3d 72, 80 (5th Cir.1995).

### **Analysis**

The Court ordered Plaintiff to brief the case with particular attention to *Bollore.* The Plaintiff responded:

> There is a crucial difference between this action, and that cited by the Court in *Bollore* … that difference being that this is [sic.] not a 3rd party [sic.] whose

assets Plaintiff is attempting to obtain, Plaintiff seeks judgment debtors assets which have been transferred without any value to Defendant Katz and KLE. Doc. 9 at 5.

The Plaintiff's argument here appears to be that he is suing Mr. Katz and KLE as alter egos of the judgment debtor.

The law does not allow that under the aegis of the turnover statute. *Bollore v. Import Warehouse, Inc.,* 448 F.3d 317 (5th Cir. 2006); *Maiz v. Virani,* 311 F.3d 334, 343-45 (5th Cir. 2002); *Schultz v. Fifth Judicial District Court of Appeals at Dallas*, 810 S.W.2d 738 (Tex. 1991), *abrogated by In re Sheshtawy*, 154 S.W.2d 114 (Tex. 2004); *Bay City Plastics, Inc. v. McEntire,* 106 S.W.3d 321, 324 (Tex. App. – Houston 2003, writ denied); *Parks v. Parker,* 957 S.W.2d 966 (Tex. App. – Austin 1997, no writ); *Cross, Kieschnick & Co. v. Johnston,* 892 S.W.2d 435, 438 (Tex. App. – San Antonio 1994, rehearing denied); *United Bank Metro v. Plain Overseas Group,* 670 S.W.2d 281, 283 (Tex. App. – Houston [1st Dist.] 1983, no writ); *Steenland v. Tex. Commerce Bank Nat'l Assn,* 648 S.W.2d 387, 389 (Tex. App. – Tyler 1983, writ ref'd n.r.e.).

The Plaintiff's argument that the court has ancillary jurisdiction to enforce judgments is also inapplicable for the relief sought in his petition. The judgment to be enforced must be pressed against the debtor, who may be in contempt or face other legal or equitable action in the court that rendered judgment upon proof in that court. *See, e.g, Waffenschmidt v. MacKay,* 763 F2d 711 (5th Cir. 1985), *cert denied,* 474 U.S. 1056, 106 S.Ct. 794, 88 L.Ed.2d 771(1986) (In a contempt proceeding, "[h]aling a person into court only upon finding that the nonparty has aided in knowingly violating an injunction fulfills traditional notions of fair play and substantial justice because it is foreseeable that the

person would be required to respond in that forum"). But it is not proper subject matter for a new lawsuit based on the turnover statute nor a mandamus issued against those not parties in the former action.

The Plaintiff is currently the only party actually before this Court. Accordingly, consideration of other relief (if any) due the Plaintiff would be inappropriate.

**Conclusion**

It is therefore the order, judgment and decree of this Court that the Plaintiff's request for an ex parte temporary restraining order is DENIED.

Signed this 26th day of January, 2009.

_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**